UNITED STATES of America, Plaintiff,

v.

Monica Marie SMITH, Defendant.

No. CR 87–251–BU.

United States District Court, D. Oregon.

Oct. 3, 1988.

**1382**

Charles H. Turner, U.S. Atty., Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff.

Steven Sady, Chief Deputy Federal Defender, Portland, Or., for defendant.

## OPINION AND ORDER

JAMES M. BURNS, District Judge.

This matter is before the court on defendant Monica Marie Smith's motion to dismiss the indictment against her for excessive pretrial delay in violation of the Interstate Agreement on Detainers Act (IADA), 18 U.S.C.A.App. pp. 585–620 (1985 ed.).[1] The court relies on the affidavits and exhibits in the record and on the arguments presented in the memoranda and at the hearing on September 28, 1988.

### FACTS

The facts essential to defendant's motion are not in dispute. The court makes the following findings of fact based on the uncontested affidavits and exhibits in the record.[2]

On or about November 10, 1987, a federal grand jury in the District of Oregon issued a two count indictment charging defendant and Bernard Lamar Smith with manufacturing methamphetamine and possession of methamphetamine with the intent to distribute. Soon thereafter defendant was incarcerated in the Jefferson County jail, in Golden, Colorado, on local charges.

On or about November 10, 1987, the Denver office of the United States Marshal issued to the Jefferson County jail a detainer against defendant based on the federal indictment. The detainer was completed on a standard Form USM–16 with the return address and signature of the U.S. Marshal in Denver. The Jefferson County jail received the detainer on or about November 10, 1987.

On November 13, 1987, Deputy Sheriff James M. Sanders advised defendant of the basis of the detainer and of her right to demand a speedy trial. At that time defendant completed the standard Form USM–17 attached to the detainer, thereby making written demand for a speedy trial on the charges in the federal indictment. The deputy sheriff witnessed defendant's acknowledgment of the detainer and demand for a speedy trial.

Thereafter, defendant was transferred to a women's correctional facility within the Colorado Department of Corrections. On or about December 11, 1987, the U.S. Marshal in Denver issued to the Department of Corrections a second detainer against defendant based on the same federal indictment. The second detainer was essentially identical to the first, except for the addressee. The Department of Corrections received it on December 18, 1987. On December 22, 1987, defendant's case manager, Robert Walter, advised defendant of the detainer and of her speedy trial rights. At that time he also witnessed defendant's completion of the Form USM–17 attached to the detainer. The second Form USM–17 was essentially identical to the first and by completing it, defendant made a second written demand for a speedy trial on the federal charges.

Both Forms USM–17 that defendant completed and signed recited: "I understand that if I do request a speedy trial, this request will be delivered to the office of

---

1. Co-defendant Bernard Lamar Smith's motion to dismiss for violation of his speedy trial rights is not before the court at this time.

2. This opinion comprises the Findings of Fact required by Fed.R.Crim.P. 12(e) and the court's conclusions of law whether they are so designated or not.

the United States Attorney who caused the Detainer to be filed." In fact, both Forms USM–17 were returned by the local prison officials to the U.S. Marshal in Denver. The Marshal's office in Denver forwarded them to the U.S. Marshal for the District of Oregon. The Marshal's office in Portland received the first on or about November 28 and the second on or about December 23, 1987. The U.S. Attorney for the District of Oregon had actual notice of defendant's demand for speedy trial.

On December 22, 1987, defendant also completed a standard form Prisoner Request for Final Disposition of Detainer and Certificate of Inmate Status. The Department of Corrections issued the Certificate of Inmate Status on January 5, 1988. On that date, the Department of Corrections mailed the Certificate to the U.S. Marshal in Denver, where it was received shortly thereafter.[3] The government contends, and the court finds, that the Certificate was not forwarded to the District of Oregon.

More than 180 days have elapsed since the date of each of the described events. No continuance has been requested or granted by the District Court for the District of Oregon.

## DISCUSSION

The IADA provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. IADA § 2 Art. III. The institution in which the prisoner is incarcerated is required to inform her promptly of the source and contents of the detainer lodged against her and of her right to request final disposition of the charges. Art. III(a). If the prisoner requests final disposition of the charges, the jurisdiction that filed the detainer must bring her to trial within 180 days.[4] Art. III(a). *See generally, United States v. Mauro*, 436 U.S. 340, 349–356, 98

S.Ct. 1834, 1841–45, 56 L.Ed.2d 329 (1978). If the prosecuting jurisdiction fails to bring the prisoner to trial within the 180 day period, the appropriate relief is dismissal of the pending indictment with prejudice. Art. V(c); *Mauro*, 436 U.S. at 364–65, 98 S.Ct. at 1849–50; *Brown v. Wolff*, 706 F.2d 902, 905 (9th Cir.1983). The prisoner need not demonstrate any prejudice arising from the delay of her trial to entitle her to relief. *Wolff*, 706 F.2d at 906.

The prisoner must strictly comply with the formal requirements for requesting final dispositions of charges before the 180 day clock will be triggered. *Johnson v. Stagner*, 781 F.2d 758, 761–62 (9th Cir. 1986). The formal requirements are set forth in Art. III(a):

"[The prisoner] shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: ...

The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner."

Thus, the three requirements are (1) written notice of the place of incarceration; (2) a request for final disposition of the indictment; and (3) the local prison official's certificate of inmate status. The burden of establishing that the notice requirement has been complied with is on the prisoner. *U.S. v. Moline*, 833 F.2d 190, 192 (9th Cir. 1987). The government contends that de-

---

**3.** The registered mail return receipt for the certificate bears no date of delivery. The government did not offer evidence of significant delay. Therefore, the court finds that the certificate was delivered to the Marshal's office in Denver shortly after it was mailed on January 5, 1988.

**4.** The court having jurisdiction of the matter may grant a continuance for good cause shown in open court with the prisoner or her counsel present. Art. II(a). There is no indication in the file that any continuance has been requested in this case.

fendant has not provided the certificate of inmate status.

The procedure for meeting the requirements is set forth in Art. III(b):

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

Defendant contends that she has complied fully with the IADA. She argues that filing the Form USM–17 and attached detainer with her local prison custodian fulfilled her obligation under Art. III(b). She contends that it then became incumbent upon the local custodian to prepare the certificate of inmate status and forward the required papers to the appropriate prosecutor and court.

The government concedes that defendant has complied with the requirements of Art. III(b). It argues that compliance with Art. III(b) is not sufficient to meet the requirements of Art. III(a). The government argues that Art. III(a) imposes ultimate responsibility on the prisoner to cause the certificate of inmate status to be actually delivered to the appropriate prosecutor and court. Its position is that defendant failed to comply with Art. III(a) because the certificate was never received in the District of Oregon.

The court is aware of no Ninth Circuit cases, either granting or denying relief under IADA, where a prisoner has fully complied with his obligations under Art. III(b) but where the certificate of inmate status never reached its proper destination.

The government relies on *Johnson v. Stagner*, 781 F.2d 758, 761–62 (9th Cir. 1986) for the proposition that a prisoner must strictly comply with Art. III(a) requirements to entitle himself to relief. In *Johnson,* the prisoner failed to send a certificate of inmate status to the prosecutor and court and he failed to submit any of the required documents through his local prison custodian. Thus, the *Johnson* decision was based on the prisoner's complete failure to comply with both Art. III(a) and Art. III(b). It is not controlling here where defendant has complied fully with Art. III(b).[5]

Defendant relies on a number of cases from other jurisdictions that are substantially on point. For example, in *United States v. Hutchins*, 489 F.Supp. 710, 715–717 (N.D.Ind.1980), the court held that a prisoner fulfilled all of his obligations under IADA by providing a completed Form USM–17 to the local official who had given him notice of the detainer against him. The court dismissed the indictment although the local official failed to promptly forward the prisoner's documents as required under Art. III(b). The court held that Art. III(a) did not require the prisoner to cause actual delivery of the required documents to the appropriate prosecutor and court.

The court finds that defendant's cases are based on sound reasoning. Compliance with Art. III(b) requires everything that a prison inmate can reasonably be expected to do in attempting to cause delivery of the certificate of inmate status as required by Art. III(a). The IADA does not authorize prisoners to prepare the certificate. Nor does it require prison officials to provide inmates with the certificate. It merely authorizes inmates to request that a certificate be prepared and forwarded to the proper destinations. A reasonable reading of Art. III(b) would lead a prisoner who has submitted a request to prison officials to rely on those officials for delivery of the certificate.

Moreover, a prisoner's rights under the IADA should not be subject to intentional

---

**5.** In a second IADA request, Johnson prepared a standard form—"Inmates Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints." He submitted the form to the local prison officials.

The receiving state conceded that this event satisfied the IADA's formal requirements and commenced the running of the 180 day period. *Johnson v. Stagner,* 781 F.2d at 762.

or negligent sabotage by government officials. To adopt the government's position would allow prison officials to undermine prisoners' speedy trial rights by neglecting to perform their statutory duties.

The court means no disrespect for the Colorado prison officials in this case. It appears defendant's certificate of inmate status was diligently forwarded to the official who had issued the detainer, the U.S. Marshal in Denver. Thus, in this case both. defendant and the prison officials have performed their statutory obligations under Art. III(b). Thereafter, the risk that the certificate would be misplaced or misdirected must be born by the receiving jurisdiction.

CONCLUSION

Defendant has diligently performed her obligations under the IADA and the government has not complied with the 180 day limit.[6] Accordingly, the indictment on file against defendant must be dismissed with prejudice.

IT IS SO ORDERED.

---

**6.** It is not clear whether the IADA's 180 day clock starts to run on the date the prisoner requests that his warden forward the required papers, on the date the papers are mailed, or on the date the receiving jurisdiction receives the documents. *See Johnson v. Stagner*, 781 F.2d 758, 762 n. 7 (9th Cir.1986); *Brown v. Wolff*, 706 F.2d 902, 907 n. 9 (9th Cir.1983). I find it unnecessary to decide this issue here. The allowable time period has expired regardless of which starting date is used.