**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Leslie REED,
Defendant–Appellant.**

No. 89–30241.

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 1990.*

Decided Aug. 7, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Diana I. Stuart, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Michael W. Mosman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before SCHROEDER, FERGUSON and WIGGINS, Circuit Judges.

FERGUSON, Circuit Judge:

The defendant appeals from the district court's denial of a motion to dismiss an indictment, alleging government violation of the 180–day speedy trial provision of the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. Appx. (1990). We reverse and remand.

## I.

In December 1985 Reed was incarcerated on a three-year term for mail theft. On August 27, 1987, while at liberty on a one-day pass, Reed escaped from the Portland Progress House correctional facility. In September 1987 a U.S. Magistrate issued a federal escape complaint against Reed. In May 1988 Reed was arrested on separate state charges in Jackson County, Oregon, and was imprisoned at the Jackson County Jail. A few days later, on June 3, 1988, a federal detainer was filed against him on the escape charge.

The detainer consisted of two forms promulgated by the U.S. Marshal's Service: USM–16, which is a notice of detainer, and an attached USM–17, which is a request for a speedy trial. Both are directed to the custodian or her deputy. The second full paragraph of the USM–16 notice form reads,

> The notice requirements of the Speedy Trial Act of 1974 (P.L. 93–619) apply if the Detainer is based on pending Federal criminal charges which have not yet been tried.... If there is an "X" mark in the following space, the notice requirements of the Speedy Trial Act apply and you are requested to give a copy of the Detainer to the prisoner and to complete the attached Form USM–17, NOTIFICA-TION REQUIREMENTS—SPEEDY TRIAL ACT, in duplicate, and return both copies of the Form USM–17 to this office with receipted copies 2 and 3 of this Detainer.

Form USM–17, the speedy trial request, gives the following instruction to the custodian:

> 4. If the prisoner demands or does not demand a speedy trial at this time, please return both copies of this executed form with the receipted copies 2 and 3 of the Detainer to this office in the enclosed self-addressed envelope.

It is clear from the record that the Oregon jailer who notified Reed of the detainer did not understand these instructions. Deputy Walker presented Reed only with the USM–16 notice form. Walker improperly filled out the form, asking Reed to check the box after the above-cited second paragraph if Reed wanted a speedy trial. Reed checked the box, and the deputy sent the USM–16 back to the U.S. Marshal's office. No USM–17 speedy trial request was signed or filled out by Walker. Relying on the deputy's erroneous instructions, Reed believed he had executed a request for a speedy trial, although the USM–16 form presented to him was not a request form.

Reed was subsequently transferred to the Oregon State Penitentiary in Salem, Oregon. The federal detainer was placed in Reed's file at the penitentiary. Because of the detainer, he was denied access to certain prisoner programs. After making inquiries into the status of his speedy trial request, Reed was arraigned in federal court on the federal escape charge on March 30, 1989, well over the 180–day limit mandated by the IADA.

Reed filed a motion to dismiss the escape charge on grounds that his trial was untimely. On May 24, 1989, the district court denied the motion, holding that "[i]t is undisputed in this case that Reed never complied with the formal notice requirements of the IAD." According to the district court, Reed could not rely on his completion of the USM–16 form, since the USM–16 is not the proper form to request a speedy trial. The court held that "[t]he evidence presented by Reed was ambiguous and insufficient to establish that he was misled or denied an opportunity to request a speedy trial."

On June 6, 1989, after reserving his rights to appeal the motion to dismiss,

Reed pleaded guilty to escape. He now timely appeals the motion to dismiss.

## II.

■ Whether the government or the prisoner have met the standards of the IADA is a mixed question of law and fact. Such questions are reviewed de novo. *See United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.1984); *cf. Johnson v. Stagner,* 781 F.2d 758, 761 (9th Cir.1986) (applying de novo review to habeas appeal regarding IADA rights).

## III.

The IADA provides a procedure by which a prisoner can demand a speedy disposition of the charges giving rise to a detainer. The IADA was designed to eradicate abuses associated with informal detainer procedures. *See United States v. Mauro,* 436 U.S. 340, 349–53, 98 S.Ct. 1834, 1841–44, 56 L.Ed.2d 329 (1978).

The Act places the following burden on the government:

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C. Appx., Art. III(c).

■ To implement this obligation, the U.S. Marshal's Service promulgated the use of forms USM–16 and USM–17 to notify prisoners of the detainer and to provide a standardized form for request of a speedy trial. Once the request for trial is made, the prosecuting jurisdiction must bring the prisoner to trial within 180 days. 18 U.S.C. Appx., Art. III(a). Failure to do so requires that the indictment against the prisoner be dismissed. *Id.* at Art. V(c); *Mauro,* 436 U.S. at 364, 98 S.Ct. at 1849.

■ Article IX of the Act states, "[t]his agreement shall be liberally construed so as to effectuate its purposes." Because of the severity of the remedy, a prisoner must strictly comply with the formal notice requirements of the Act, *Johnson v. Stagner,* 781 F.2d 758, 761–62 (9th Cir.1986), and the prisoner has the burden to show that a request for speedy trial has been made. *United States v. Moline,* 833 F.2d 190, 192 (9th Cir.1987). Nevertheless, in cases where the government has failed to meet its obligations, and the prisoner has attempted, but through no fault of her own failed to comply with the technical requirements of the Act, the IADA's remedial provisions still apply. *United States v. Smith,* 696 F.Supp. 1381, 1383 (D.Or.1988); *Nash v. Jeffes,* 739 F.2d 878, 884 (3rd Cir. 1984), *rev'd on other grounds, Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

Although the government notified Reed of the charge against him, it misled him about how to file a speedy trial request. An examination of the actual detainer form presented to Reed shows that the Deputy failed to fill out a USM–17 speedy trial request form, and that the Deputy misunderstood the USM–16 notice of detainer form she showed Reed.

On the detainer form, a box is checked after the sentence, "If there is an "X" mark in the following space ... you are requested to give a copy of the Detainer to the prisoner and to complete the attached Form USM–17 ... in duplicate, and return both copies of the Form USM–17 to this office...."

The reverse side of the form, entitled, "Special Instructions," gives special instructions for detainers issued by the U.S. Parole Commission—inapplicable and irrelevant to Reed.

At the bottom of the same reverse side entitled "Special Instructions" is a space for the deputy alone to sign the form, state the deputy's title, and date the form. The deputy erroneously directed Reed to sign where the custodian was to sign, and Reed's signature is in this space.

According to the form instructions, the only place where the prisoner is to sign is on the USM–17 form, which requests a speedy trial. However Reed was never

presented with the USM–17. It is obvious that the deputy, who was supposed to fill out and return the USM–17 form, did not do so. Reed was misled and not provided with the correct trial request form.

The district court appears also to have misunderstood the detainer forms. The district court's opinion reads:

> One June 3, 1988, while Reed was still in the Jackson County Jail, he was served with a federal detainer, Form USM 16. On the front of the Form USM 16, there is an "X" mark in a box following this language: "If there is an "X" mark in the following space, please follow the instructions on the reverse of this form, acknowledge receipt on copies 2 and 3 of this Detainer and return them to this office in the enclosed self-addressed envelope. Reed signed the back page of Form USM 16. Two copies of this form were returned to the United States Marshals Service.

The language cited by the district court comes from the third full paragraph of the USM–16 form. Exhibit A shows that the box following this language is *not checked*. Contrary to the district court's finding, the box actually checked pertains to a wholly separate paragraph on the form.

The language wrongly cited by the district court pertains to detainers issued by the U.S. Parole Commission and references the special instructions for such detainers on the back of the form. Had Reed's detainer been issued by the Parole Commission, and had the relevant box referencing the special instructions been checked, then the government would have been under no obligation to provide Reed with the USM–17 speedy trial request form.

The district court stated that the special instructions on the back of Exhibit A "inform[ ] the prisoner of his right to submit information before action is taken on the warrant which is the subject of the detainer." This is also mistaken. The special instructions state that a prisoner facing detainer by the Parole Commission may submit information to the Parole Commission. This has nothing to do with Reed's detainer, issued by a federal magistrate for a federal indictment.

■ It appears that the district court, like the custodial deputy, believed that the special instructions language designed for Parole Commission detainers adequately informed Reed of his rights for federal indictment detainers, and that therefore the government, without presenting to Reed the necessary USM–17 form, had fulfilled its notice obligations. This confusion suggests the need for revision of the detainer forms.

### IV.

■ The clear purpose of the IADA was to promote the "expeditious and orderly disposition" of untried complaints against prisoners. 18 U.S.C. Appx., Art. I. The prisoner is responsible for making a request in writing for a speedy trial to the prison official in charge of him. *Id.*, Art. III(b). Together with a certificate stating the conditions of the prisoner's current imprisonment, the prison official is then to forward that request "to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." *Id.* This is the statutory procedure by which the prisoner satisfies his obligation to "cause[ ] to be delivered to the prosecuting officer" his request for a speedy trial. *Id.* Art. III(a). When forms USM–16 and USM–17 are used, the prisoner's obligation is satisfied by marking that she wants a speedy trial on the USM–17 and signing the form.

■ Given that the statute is to be "liberally construed" to effect the rapid disposal of outstanding detainers, when the government has failed to fulfill its obligations under the Act, yet the prisoner has clearly attempted to get a speedy trial, courts have dismissed indictments not prosecuted within 180 days. In *United States v. Hutchins,* 489 F.Supp. 710, 714–15 (N.D. Ind.1980), the government gave to the prisoner, and the prisoner completed, the USM–17 request form before he actually began his term in prison. The government contended that the filed form was therefore technically ineffective. The court rejected the argument and dismissed the indictment. The court observed:

Here, the government's argument boils down to this: Because the United States Marshals Office that prepared and served the detainer mistakenly and unnecessarily caused the defendant to be informed, before he had entered upon a term of imprisonment, of his rights to demand speedy disposition of the charges underlying the detainer, the pre-sentence demand so made was ineffective and a nullity. In the context of his case, a corollary to the Government's argument is that the rights of a sentenced prisoner under the Agreement can be successfully torpedoed when prison authorities having custody of the prisoner neglect to fulfill their duties under Article III(c) to provide notice and opportunity.

489 F.Supp. at 714–15.

As in *Hutchins*, Reed's rights should not be eliminated by the custodial deputy's failure properly to instruct Reed on the meaning of the USM–16 form and failure to provide and send in the USM–17 speedy trial request form.

Similarly, in *United States v. Smith*, 696 F.Supp. 1381 (D.Or.1988), the prisoner completed the USM–17 request form, but the U.S. Marshal failed to forward one of the required supporting documents—the Certificate of Inmate Status—to the appropriate district court. The government argued that the prisoner had failed to meet the requirements of the Act, because "Art. III(a) imposed ultimate responsibility on the prisoner to cause the certificate of inmate status to be actually delivered to the appropriate prosecutor and court." 696 F.Supp. at 1384. The court rejected this argument, stating,

> [A] prisoner's rights under the IADA should not be subject to intentional or negligent sabotage by government officials. To adopt the government's position would allow prison officials to undermine prisoner's speedy trial rights by neglecting to perform their statutory duties.

*Id.* at 1384–85.

The same principle clearly applies in this case. Accordingly, the escape indictment against Reed must be dismissed.

■ However, section 9 of the IADA states that when, as here, the United States is the receiving state, the court dismissing the indictment should determine whether the dismissal should be "with or without prejudice." The language of this section, adopted on November 18, 1988, closely follows similar language in the Speedy Trial Act, 18 U.S.C. Section 3162(a).

> (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the detainers and on the administration of justice. . . .

18 U.S.C. Appx., § 9 (1990).

Our research has discovered no cases under the Detainers Act addressing whether the court of appeals should decide to dismiss with or without prejudice or remand for a determination by the district court. Under the similar provision of the Speedy Trial Act, however, the general practice is to remand: "When reversing failures to dismiss an indictment for a Speedy Trial Act violation ... courts of appeals have usually remanded this issue to the trial court." *United States v. Doran*, 882 F.2d 1511, 1518 (10th Cir.1989); *see also United States v. Perez–Reveles*, 715 F.2d 1348, 1353 (9th Cir.1983). We therefore remand to the district court for a determination of whether the indictment should be dismissed with or without prejudice.

REVERSED and REMANDED.