Richard LARA, Appellant,

v.

The STATE of Texas, State.

Nos. 2–94–246–CR, 2–94–247–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 26, 1995.

Wes Ball, Ball, Hase & Wisch, Arlington, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Asst. Chief Appellate Section, Charles M. Mallin, Asst. Chief Appellate Section, Helena F. Faulkner, Asst. Crim. Dist. Attorney, Lisa Mullen, Asst. Crim. Dist. Attorney, Joetta Keene, Asst. Crim. Dist. Attorney, Fort Worth, for Appellee.

Before DAUPHINOT, BRIGHAM and PAUL W. NYE (Retired) (Sitting by Assignment), JJ.

## OPINION

BRIGHAM, Justice.

Appellant, Richard Lara, was convicted of aggravated robbery with a deadly weapon. After finding him guilty, the jury assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In one point of error, appellant complains that the trial court erred in overruling his motion to dismiss indictments for failure by the State to comply with the Interstate Agreement on Detainers Act (the "IAD")[1]. We overrule his sole point of error and affirm the judgment of the trial court.

## PROCEDURAL HISTORY

Appellant was committed as a juvenile in California in 1988 and escaped in October, 1991. On March 6, 1993, he committed the instant offense, the aggravated robbery of a Hurst, Texas, couple. Appellant was arrested on a traffic warrant in Tarrant County on June 1, 1993, and Texas authorities learned he was a fugitive from California. At that point, he was returned to California to serve the remainder of his sentence at the California Youth Authority.

On July 15, 1993, charges of attempted capital murder and aggravated assault with a deadly weapon were filed against appellant in connection with the assault on the Hurst couple. At that time, the Tarrant County District Attorney requested the California Youth Authority place the warrant as a detainer and informed it that Tarrant County wished to extradite. Appellant wrote the trial court in Tarrant County on August 27, 1993, expressing his desire to face the Tarrant County charges quickly. Upon receipt by the Tarrant County District Clerk, the letter was forwarded to the Tarrant County District Attorney. On September 3, 1993, the Tarrant County District Attorney's office again notified California that it wished to extradite appellant.

Appellant sent a letter to the Tarrant County District Clerk to demand a speedy trial on the attempted capital murder and aggravated assault charges. This second demand was forwarded to the Tarrant County District Attorney. Still later, the Los Angeles County Public Defender Office sent a certified letter to Tarrant County on November 23, 1993, stating that California authorities refused to file the documents necessary to a valid demand for trial under the IAD because they believed the pact was inapplicable to juveniles. In response, the Tarrant County District Attorney's Office on December 3, 1993, filed a request for appellant's return under the IAD. Appellant arrived at the Tarrant County jail on January 28, 1994, and trial on the charges stemming from the attack on the Hurst couple began on April 18, 1994.

## POINT OF ERROR

Appellant complains the trial court erred by overruling his motion to dismiss the indictments stemming from the Hurst attack for the State's failure to comply with the IAD. He notes that he was not brought to trial until after 180 days had elapsed since the August 27, 1993, letter and argues that the delay was a violation of the IAD. *See* TEX.CODE CRIM.PROC.ANN. art. 51.14, Article III(a) (Vernon 1979).

Appellant takes issue with the trial court's finding that his August 27, 1993, letter did not meet the requirements of the IAD. He argues that a defendant cannot be held re-

1. TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979).

sponsible for administrative procedures, errors, or delays over which he has no control and says he should not be responsible for fulfilling the statutory requirements. Appellant relies upon authority from other states to support his assertion that it is the responsibility of the authorities of both the retaining and receiving states to give correct information about the IAD and to supply the correct forms where necessary. *Pittman v. Delaware*, 301 A.2d 509, 514 (Del.Supr.1973); *Colorado v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641, 643–44 (1979); *New York v. Esposito*, 37 Misc.2d 386, 394, 201 N.Y.S.2d 83, 90 (Queens County Ct.1960). He also argues that federal jurisdictions have consistently held the IAD does not penalize a defendant who attempts to obtain a speedy trial but fails for some technical reason or because of delay caused by the government, relying on *U.S. v. Tummolo*, 822 F.Supp. 1561, 1564 (S.D.Fla.1993); *U.S. v. Reed*, 910 F.2d 621, 626 (9th Cir.1990); *U.S. v. Smith*, 696 F.Supp. 1381, 1384 (D.Or.1988); and *U.S. v. Hutchins*, 489 F.Supp. 710, 714–15 (N.D.Ind. 1980).

The State counters that the IAD is inapplicable to appellant because he was imprisoned in a juvenile facility rather than in a penal or correctional institution. It also claims that appellant did not comply with the IAD's notice requirements necessary to trigger the 180-day period, and it concludes its response by maintaining that any delay was caused by California and that Texas should not, as a result, be penalized with dismissal.

■ We reject the State's argument that the IAD is inapplicable to appellant. The litigation specialist for the Tarrant County District Attorney's office testified that she was initially told the IAD did not apply because California had taken the position that a juvenile institution was not a penal institution; however, she later said that California eventually released appellant after Tarrant County filed a formal request for his return under the IAD. Despite her testimony that an unnamed California penal system official told her that "this is the first time in thirteen years he had ever known of a juvenile being able to leave California and coming back to another state," she never explained how ap-

pellant was returned to Texas if California had not eventually applied the IAD.

■ We find more convincing the State's contention that appellant never formally invoked the IAD on his own behalf. Appellant mailed two letters to the Tarrant County District Attorney. One was received on August 27, 1993, and the second was received on October 26, 1993. On November 23, 1993, the Los Angeles County Public Defender Office informed Tarrant County that appellant wished to invoke the IAD. Because appellant's trial began on April 18, 1994, within 180 days of receipt of the October, 1993, letter, the State correctly notes that appellant can prevail *only* if the August 27, 1993, letter was sufficient to invoke the IAD.

The IAD requires a defendant to be brought to trial within 180 days after making a proper request for disposition of the subject matter of the detainer lodged against him by the non-custodial sending state. The IAD also states that the prisoner's request:

> [S]hall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner.

TEX.CODE CRIM.PROC.ANN. art. 51.14, Article III(a) (Vernon 1979). Appellant's letter stated:

> At this time I'm in the care of the State of California/Department of the Youth Authority.
>
> The State of Texas is charging me with ATT Commit Cap Muder [sic] and Agg Robb—Deadly WPN. # 0518135/ # 0518136.
>
> I would like to know what the State of Texas plans are for me.
>
> I would like to come back to the State of Texas and face these charges A.S.A.P. Can you Please have someone or A Pointed Attorney [sic] write me and let me know whats [sic] going on with the case.

The Youth Authority is being No help to me.

Clearly, appellant's request did not include a certificate from the official having custody of him, nor did the request include any information regarding his term of commitment, time served, time remaining on his sentence, good time accumulated, his parole eligibility, or any decision from the state parole agency. Appellant took it upon himself to notify the Tarrant County court directly, and as a result, assumed the responsibility of making sure that his notice was sent in the proper form and included the required information. *Bryant v. State,* 819 S.W.2d 927, 931 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *Burton v. State,* 805 S.W.2d 564, 575 (Tex. App.—Dallas 1991, pet. ref'd). *Accord Casper v. Ryan,* 822 F.2d 1283, 1292 (3rd Cir. 1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). Our reading of appellant's August, 1993, letter indicates he made no attempt to include the required information. We find the trial court did not err by finding the August, 1993, letter was insufficient to begin running the 180–day period under the IAD. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.