COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Bumgardner and Senior Judge Hodges
Argued at Alexandria, Virginia


JOHN ARTHUR YIAADEY
                                          OPINION BY
v.    Record No. 0506-98-4        JUDGE ROSEMARIE ANNUNZIATA
                                         APRIL 20, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WARREN COUNTY
Dennis L. Hupp, Judge

S. Jane Chittom, Appellate Counsel (Elwood
Earl Sanders, Jr., Appellate Defender;
Public Defender Commission, on briefs), for
appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


John Arthur Yiaadey ("appellant") was convicted of

possession of cocaine in violation of Code § 18.2-250.  On

appeal, he contends the trial court erred in failing to dismiss

his indictment based on alleged violations of his rights under

the Interstate Agreement on Detainers ("the IAD").  He further

contends the Commonwealth violated his right to a speedy trial

under Code § 19.2-243.  We find no error and affirm.

I.

BACKGROUND PRINCIPLES REGARDING THE IAD

Codified at Code §§ 53.1-210 to 53.1-215, "[t]he IAD

encourages the expeditious disposition of criminal charges

against out-of-state prisoners, and provides cooperative procedures among member states to facilitate such disposition." Beachem v. Commonwealth, 10 Va. App. 124, 128, 390 S.E.2d 517, 518-19 (1990). See Code § 53.1-210, Article I. When authorities in one state ("the receiving state") lodge a detainer against a prisoner in another state ("the sending state"), the provisions of the IAD give the prisoner the right to have that detainer disposed of within a certain time frame, provided other conditions are satisfied. Should the receiving state fail to try a prisoner on the charges underlying its detainer within the required time frame, "the appropriate court of the [receiving state] shall enter an order dismissing the [prisoner's indictment] with prejudice, and any detainer based thereon shall cease to be of any force or effect." Code § 53.1-210, Art. V(c).

The time limitations of the IAD vary depending on who initiates the prisoner's transfer for trial in the receiving state. Under Article IV, if the receiving state requests custody of the prisoner, the receiving state must begin prosecution within 120 days from the day the prisoner arrives in the receiving state.[1] Under Article III, if the prisoner

_____

[1]Article IV of the IAD provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he

requests final disposition of his detainer and complies with
other provisions of the IAD, prosecution in the receiving state
must commence within 180 days from the date the prisoner gives
proper notice.[2]  In response to a request under either Article

has lodged a detainer and who is serving a
term of imprisonment in any party state made
available in accordance with Article V . . .
upon presentation of a written request for
temporary custody . . . to the appropriate
authorities of the state in which the
prisoner is incarcerated . . . .

\*     \*     \*     \*     \*     \*     \*

(c) In respect of any proceeding made
possible by this article, trial shall be
commenced within 120 days of the arrival of
the prisoner in the receiving state . . . .

Code § 53.1-210.

[2]Article III provides:

(a) Whenever a person has entered upon a
term of imprisonment in a penal or
correctional institution of a party state,
and whenever during the continuance of the
term of imprisonment there is pending in any
other party state any untried indictment,
information or complaint on the basis of
which a detainer has been lodged against the
prisoner, he shall be brought to trial
within 180 days after he shall have caused
to be delivered to the prosecuting officer
and the appropriate court of the prosecuting
officers' jurisdiction written notice of the
place of his imprisonment and his request
for a final disposition to be made of the
indictment . . . .

(b) The written notice and request for final
disposition referred to in paragraph (a)
hereof shall be given or sent by the
prisoner to the warden, commissioner of

III or Article IV, the appropriate authority in the sending state "shall offer to deliver temporary custody" of the prisoner to the appropriate authority in the receiving state. Id. at Art. V(a). The IAD "shall be liberally construed so as to effectuate its purpose." Id. at Art. IX. The threshold issue in this case is whether an Article III disposition was invoked.

## II.

### FACTUAL BACKGROUND

On April 4, 1994, appellant was indicted in the Circuit Court of Warren County for possession of cocaine with the intent to distribute. Before appellant could be tried on this indictment, appellant was convicted and incarcerated in West Virginia for an unrelated offense. At a hearing on August 22, 1994, the prosecuting Commonwealth's attorney ("the prosecutor") asked the court to issue a detainer to secure appellant's custody under the IAD. The court granted the prosecutor's

---

> corrections or other official having custody of him, who shall promptly forward it . . . to the appropriate prosecuting official and court . . . .
>
> (c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

Code § 53.1-210.

request. The prosecutor also informed the court that, according to appellant's attorney, appellant was willing to reenter Virginia for trial on the pending indictment.

On August 29, 1994, the prosecutor requested temporary custody of appellant from the Administrator of the South Regional Jail in West Virginia for the purpose of trying him on the instant indictment.[3] The prosecutor communicated the request on a standard form titled "Form V, Request for Temporary Custody." On September 6, 1994, appellant's jailers informed him that the Commonwealth had lodged a detainer against him and had submitted a request for temporary custody.

On December 8, 1994, in accordance with the IAD and in response to the Commonwealth's request, the acting warden of Huttonsville Correctional Center offered to deliver temporary

---

[3]The Commonwealth's request provides in pertinent part:

> Please be advised that John Arthur Yiaadey who is presently an inmate of your institution, is under indictment in the County of Warren, Commonwealth of Virginia, of which I am the Commonwealth's Attorney.
>
> *     *     *     *     *     *     *
>
> I propose to bring this person to trial on this indictment within the time specified in Article IV(c) of the [IAD].
> In order that proceeding in this matter may be properly had, I hereby request temporary custody of such person pursuant to Article IV(a) of the [IAD].

custody of appellant.[4]  The warden sent the offer on "Form IV,

Offer to Deliver Temporary Custody" and included the certificate

of inmate status required by the IAD.  Appellant's signature

appears at the bottom of Form IV, beneath a verification of his

counsel's identity, phone number, and address and separated from

the body of the warden's offer by a dashed line across the page.

Nothing on Form IV expressly indicates that appellant was

invoking his right to request final disposition of the

Commonwealth's indictment under the IAD.  The Commonwealth's

Attorney's office received West Virginia's offer on December 12,

1994.

On March 21, 1995, Carolyn Meade, the Record Clerk at

Huttonsville, called the prosecutor to remind him that "the 180

day time frame [to try appellant under Article III of the IAD]

was running out."  On multiple occasions from April 11 to

November 8, 1995, West Virginia correctional personnel requested

that the prosecutor send them Forms VI and VII in order to

complete appellant's transfer to Virginia.  The prosecutor

_____

[4]West Virginia's offer provides in pertinent part:

> Pursuant to the provisions of Article V of
> the Agreement on Detainers between this
> state and your state, the undersigned hereby
> offers to deliver temporary custody of [John
> Yiaadey] to the appropriate authority in
> your state in order that speedy and
> efficient prosecuting may be had of the
> indictment, information or complaint which
> is [a]scribed in your request for custody of
> August 30, 1994.

declined to file Forms VI and VII, believing they only applied to an Article III, prisoner-initiated request for transfer under the IAD and that appellant's case involved an Article IV, state-initiated request for transfer.[5]

In May 1995, a West Virginia Parole Board granted appellant parole; however, appellant remained incarcerated under the Commonwealth's detainer. On June 28, 1995, just over 180 days after the Commonwealth received West Virginia's Form IV Offer to Deliver Temporary Custody, appellant filed a habeas corpus petition in West Virginia. Appellant claimed that he had invoked his right to a final disposition of the Warren County indictment under Article III of the IAD using West Virginia's Form IV and that the 180-day time period for prosecution of the indictment had expired. This petition became moot when the Commonwealth released its detainer on November 17, 1995 upon appellant's agreement to appear voluntarily in the Warren County Circuit Court.

Appellant appeared in circuit court on March 5, 1996 and moved to dismiss the indictment, citing a violation of the Article III, 180-day time-table to initiate trial. In his petition, appellant's counsel asserted that West Virginia authorities told appellant that his signature on Form IV constituted a waiver of extradition and required Virginia to

_____

[5]Appellant concedes that Form VII is only applicable to prisoner-initiated requests.

bring appellant to trial within 180 days. Counsel further argued that appellant's signature on Form IV, when considered with the prosecutor's knowledge that appellant was willing to return to Virginia for trial on his indictment and with the prosecutor's correspondence with West Virginia authorities, constituted a written request for a speedy trial sufficient to trigger the running of time under Article III.[6]

Noting that Article III and Article IV represented two distinct and separate procedures, the former involving a prisoner-initiated process and the latter involving a state-initiated process, the trial court ruled that this case fell within an Article IV, state-initiated transfer of custody. Finding that appellant had not requested final disposition of his indictment, the court held that the Article III 180-day limitation did not apply and denied appellant's motion to dismiss.

After the court's initial ruling from the bench, it heard further argument on appellant's motion to dismiss and clarified its ruling. Appellant asserted summarily that his right to a speedy trial within nine months has been violated, presumably under Code § 19.2-243, which provides a statutory right to a speedy trial. Code § 19.2-243 was never expressly cited as a

---

[6]Appellant admits on appeal, however, that ideally he should have filed standard Form II, which is a request for speedy disposition of pending charges in other states, to trigger the time limitation of Article III.

ground for dismissal of the charge. Furthermore, appellant neither argued for dismissal on this statutory ground nor asked the court to rule on the issue. Instead, appellant focused on restating his argument for dismissal on the basis of the alleged violation of the Article III, 180-day time-table.

After the court reiterated its decision to deny appellant's motion, appellant entered into a plea agreement in which he pled guilty to possession of cocaine on the condition that he retained the right to appeal "all issues relation [sic] to Speedy Trial/Detainer." Explaining the issues that the agreement would preserve, appellant's counsel had the following discourse with the court:

> [COUNSEL]: It is also further agreed that the Commonwealth will not object, and the Defendant does not waive his right to appeal the issue of the speedy trial situation. And it is further agreed, Your Honor, that . . .
>
> THE COURT: Are you talking about on the Agreement on Detainers?
>
> [COUNSEL]: The detainers.
>
> THE COURT: The argument made here today?
>
> [COUNSEL]: Yes, Your Honor, on the detainer issue.

Further, upon accepting appellant's plea of guilty, the court stated, "All right, I do understand this is a conditional plea, reserving the one issue for appeal." In response, appellant's counsel stated, "Yes, Your Honor."

                                III.

                          MOTION TO DISMISS

     Appellant concedes that he has not strictly complied with
the procedure for requesting final disposition under Article
III.  Nevertheless, appellant argues that, given the information
and forms provided to him by West Virginia authorities following
the lodging of Virginia's detainer, he substantially complied
with the requirements of Article III and thus triggered its
180-day limitation on December 12, 1994, the day the
Commonwealth received West Virginia's Offer of Temporary
Custody.  As such, appellant contends the Commonwealth failed to
timely prosecute the charge and asserts the trial court erred in
failing to grant his motion to dismiss the indictment.  We
disagree.

     Under Virginia law, a prisoner must strictly comply with
the procedure established in Article III for requesting final
disposition of an untried indictment.  See Eckard v.
Commonwealth, 20 Va. App. 619, 627, 460 S.E.2d 242, 246-47
(1995) (surveying other jurisdictions' interpretation of Article
III and agreeing that strict compliance is required).  Inter
alia, the prisoner must make a written request for final
disposition of an indictment upon which a detainer is based and
deliver that request to the warden of the institution where the
prisoner is incarcerated.  See Code § 53.1-210, Art. III(b);

Eckard, 20 Va. App. at 628, 460 S.E.2d at 246.  Once the

prisoner does so:

> "the warden must forward [the request],
> together with a certificate providing
> certain information about the prisoner's
> terms of confinement, to the appropriate
> prosecuting official and court of the
> receiving State.  The authorities in the
> receiving State then must bring the prisoner
> to trial within 180 days, absent good cause
> shown, or the court must dismiss the
> indictment, information or complaint with
> prejudice, and the detainer will cease to be
> of any force or effect."

Delgado v. Commonwealth, 16 Va. App. 50, 56, 428 S.E.2d 27, 30

(1993) (quoting Carchman v. Nash, 473 U.S. 716, 721 (1985))

(emphasis omitted).

Requiring strict compliance with the provisions of the IAD

yields substantial benefits.  Eckard, 20 Va. App. at 628, 460

S.E.2d at 247.  Strict compliance enables the prosecuting

authority to avoid the severe Article V(c) sanction of dismissal

by ensuring that adequate notice of a prisoner's Article III

request has been given, lessens the administrative burden of

having to sort through every prisoner's correspondence and

pleadings for IAD references, and facilitates the prosecutor's

determination of whether to dedicate resources to the

prosecution of a prisoner.  See id.  Although Article IX states

the IAD "shall be liberally construed so as to effectuate its

purposes," we have held that permitting substantial

circumvention of IAD procedures does not comport with its

purpose of attaining "the orderly and expeditious disposition of charges pending in foreign jurisdictions and . . . establish[ing] . . . cooperative procedures to facilitate such disposition." Id. at 629, 460 S.E.2d at 247 (citing People v. Garner, 224 Cal.App.3d 1363, 1370 (Cal. Ct. App. 1990)).

Of the justifications for requiring strict compliance with Article III procedures, the Commonwealth's need for notice of a prisoner's request for final disposition of a pending indictment, is of singular importance under our decisions. In Eckard, we stated, "[c]ompliance with the procedural requirements [of Article III] is the only way the Commonwealth can be placed on notice that they must bring the prisoner to trial within 180 days." Id.[7] In Delgado, we held "that for [a] prisoner to be entitled to a dismissal with prejudice of an indictment pending in the receiving state, he or she must prove not only that notice of the request for disposition has been received [by the receiving state] but also that the request was 'accompanied by a certificate of the appropriate official having custody,' together with the information required by [Article III(a)]." Delgado, 16 Va. App. at 58, 428 S.E.2d at 32 (quoting

---

[7]In Eckard, a prisoner sent a communication, purporting to be an Article III request, directly to the Commonwealth by certified mail. We held that the prisoner failed to trigger the 180-day limitation of Article III "because [his] request was both unaccompanied by the warden's certificate and was sent to [Commonwealth's officials] directly from [the prisoner] instead of the warden . . . ." Id. at 626, 460 S.E.2d at 246.

Code § 53.1-210).  "'[T]he receiving state cannot be charged with attempting to try the prisoner within 180 days until the receiving state has been given notice, by the prisoner or by officials of the sending state, of a request to proceed under Article III.'"  Id. at 57, 428 S.E.2d at 31 (quoting State v. Moore, 774 S.W.2d 590, 595 (Tenn. 1989)) (emphasis omitted).[8]  In Fex v. Michigan, in addressing the importance of receiving proper notice under Article III, the United States Supreme Court refused to place the burden of a mistake by the sending state on the receiving state, stating "[i]t is more reasonable to think that the receiving State's prosecutors are in no risk of losing their case until they have been informed[, by receipt of the prisoner's request,] of the request for trial."  507 U.S. 43, 51 (1993).

In this case, appellant's failure to strictly comply with the requirements of Article III is fatal to his claim. Furthermore, the evidence is insufficient to prove the Commonwealth received actual notice of his intent to invoke his

---

[8]In Delgado, we rejected the defendant's argument that the 180-day time period of Article III commenced upon notification to the sending state of his request for disposition, holding that the period begins to run "[u]pon receipt of [the prisoner's request and the appropriate certificate] by the court and prosecutor in the receiving state."  Id. at 58, 428 S.E.2d at 32.  "We do not believe that the legislature intended to make a sister state or territory warden, over which Virginia authorities have no control, its agent for the purpose of receiving notices and documents required by the IAD."  Id. at 58-59, 428 S.E.2d at 32.

rights under Article III.  The prosecutor made a request for temporary custody of appellant, specifically referencing Article IV of the IAD.  As required by Article V, the acting warden of Huttonsville offered to deliver temporary custody of appellant, using Form IV to do so.  Nothing on the face of Form IV shows that appellant requested or attempted to request final disposition of his indictment under Article III of the IAD.  Indeed, Form IV plainly acknowledges that it is a response to the Commonwealth request for custody.[9]  Form IV further discloses nothing more than appellant's identification of counsel followed by appellant's signature, neither of which can be read as an invocation of Article III rights.

In support of his argument, appellant cites several federal and state cases that have dismissed indictments not tried within 180 days of a prisoner's attempt to obtain final disposition, notwithstanding the prisoner's failure to strictly comply with the procedures established in Article III.  See United States v.

---

[9]Form IV states:

> Pursuant to the provisions of Article V of the Agreement on Detainers between this state and your state, the undersigned hereby offers to deliver temporary custody of [John Yiaadey] to the appropriate authority in your state in order that speedy and efficient prosecuting may be had of the indictment, information or complaint which is [a]scribed in your request for custody of August 30, 1994.

(Emphasis added).

<u>Reed</u>, 910 F.2d 621 (9th Cir. 1990); <u>United States v. Hutchins</u>, 489 F. Supp. 710 (N.D. Ind. 1980); <u>Schofs v. Warden</u>, 509 F. Supp. 78 (E.D. Ky. 1981); <u>Pittman v. State</u>, 301 A.2d 509 (Del. 1973). The authorities cited by appellant, which predate our holdings in <u>Eckard</u> and <u>Delgado</u> and the Supreme Court's decision in <u>Fex</u>, are either inconsistent with or distinguishable from controlling Virginia precedent.

In <u>Hutchins</u>, <u>Schofs</u>, and <u>Pittman</u>, prisoners sent communications requesting disposition of pending indictments directly to officials in the receiving state because of an error committed by officials in the sending state. In each case, the court found the prisoner's request adequate to trigger the Article III time limitation, notwithstanding the fact that the request was neither routed through the appropriate official in the sending state nor accompanied by the necessary certificate of the custodial official. <u>See</u> <u>Hutchins</u>, 489 F. Supp. at 712, 716-17; <u>Schofs</u>, 509 F. Supp. at 82; <u>Pittman</u>, 301 A.2d at 511, 513. <u>See</u> Code § 53.1-210, Art. III(a),(b). These cases plainly contradict our holding in <u>Eckard</u> that the 180-day period of Article III does not commence unless the appropriate official in the sending state sends the prisoner's request to the Commonwealth, together with the appropriate certificate, and are not controlling. <u>See</u> <u>Eckard</u>, 20 Va. App. at 626, 460 S.E.2d at 246. <u>See also</u> <u>Delgado</u>, 16 Va. App. at 58, 428 S.E.2d at 32. Furthermore, in these cases, the evidence showed that the

receiving state had actual notice of the prisoner's intent to invoke Article III, a fact which was material to the court's decision.  See Hutchins, 489 F. Supp. at 712, 715-16; Schofs, 509 F. Supp. at 82; Pittman, 301 A.2d at 511, 513.  Assuming without deciding that Virginia would adopt the standard that a receiving state's actual notice of a prisoner's Article III request satisfies the IAD, for reasons already stated, the evidence adduced in this case does not support a finding of actual notice.

In Reed, the Court of Appeals for the Ninth Circuit found the prisoner "clearly attempted" to request final disposition of a federal indictment, notwithstanding the fact that he incorrectly filled out the necessary forms, and dismissed the indictment.[10]  Reed, 910 F.2d at 625-26.  Even were we to conclude that the Reed holding is consistent with the dictates of Eckard and Delgado, in the case before us, the evidence does not support the conclusion that appellant attempted to request final disposition of his Warren County indictment.  Indeed, in response to the Commonwealth's request for temporary custody of appellant, West Virginia officials returned Form IV, which, on its face, states the Commonwealth had initiated the request for appellant's transfer.  Form IV contains no statement whatsoever

_____

[10]The prisoner's error was attributable to the erroneous instructions of a custodial official in the sending state.  See Reed, 910 F.2d at 623.

that appellant requested final disposition of his case by the Commonwealth. Appellant's signature on Form IV merely verified the identity of his counsel and nothing more. As the trial court recognized, although appellant may have desired final disposition of the indictment, he failed to notify the Commonwealth by delivering a written request in strict compliance with the IAD. Contrary to appellant's assertion, the prosecutor's knowledge that appellant was willing to return to Virginia for trial does not constitute an adequate substitute for compliance with IAD procedures and did not provide notice that appellant invoked his rights under Article III. Based on the foregoing, the trial court properly denied appellant's motion.

IV.

APPELLANT'S ARTICLE V ARGUMENT

Appellant further asserts the Commonwealth violated Article V(c) of the IAD by failing to accept temporary custody of appellant within a reasonable time after West Virginia made its offer to deliver temporary custody. Article V(c) provides that "if the appropriate authority shall refuse or fail to accept temporary custody . . . the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice . . . ." Appellant's claim of error is barred under Rule 5A:18 because he failed to raise this argument before the

trial judge and, therefore, denied the judge the opportunity to consider the question.  Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (barring appellant's argument on appeal that the Commonwealth's reasons for striking potential jurors were pretextual because appellant did not allege error on this ground before the trial judge).

V.

ALLEGED VIOLATION OF STATUTORY RIGHT TO SPEEDY TRIAL

Finally, appellant contends the Commonwealth violated Code § 19.2-243, which provides that an accused must be brought to trial within five months after his or her preliminary hearing if he or she is in custody or within nine months if he or she is not in custody.  Appellant contends he preserved this issue in his plea agreement.  Relying on the same authority set forth above, we find that appellant failed to preserve this argument.

Appellant failed to cite a violation of Code § 19.2-243 in his written Motion to Dismiss, faxed to the circuit court on March 4, 1996.  During initial argument on the motion the next day, appellant's counsel again failed to allege a violation of Code § 19.2-243.  Upon asking the court to hear further argument on his motion to dismiss, counsel asserted in conclusory fashion that his right to a speedy trial within nine months was violated.  Counsel did not specifically reference Code § 19.2-243 and did not state with particularity his grounds for dismissal based on this statutory right.  Further, counsel did

not ask the court to rule on whether Code § 19.2-243 had been violated. Counsel's passing reference to appellant's right to speedy trial did not sufficiently raise the issue before the trial judge to preserve it for appellate review.

We find no merit to appellant's further contention that this issue has been preserved by reference in his plea agreement. Although the agreement states that appellant retains the right to appeal "all issues" relating to "Speedy Trial/Detainer," appellant's counsel conceded twice before the trial judge that the agreement only preserved appellant's argument concerning the alleged violation of Article III of the IAD. Appellant's claim of error has thus not been preserved.

For the foregoing reasons, appellant's conviction is affirmed.

<u>Affirmed.</u>