UNITED STATES of America,
Appellee,

v.

Timothy MANUEL, Defendant–
Appellant.

Docket No. 02–1434.

United States Court of Appeals,
Second Circuit.

May 15, 2003.

Terrance C. Brennan, Grand Island, New York, for Defendant–Appellant.

Mary Clarke Kane, Assistant United States Attorney, Buffalo, New York, for Appellee.

Present: VAN GRAAFEILAND, MINER, and POOLER, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 15th day of May, two thousand and three.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

On June 7, 2000, at approximately 11:37 p.m., an anonymous informant called the 911 operator and reported that three men with pistols were standing on the corner of Wohlers Avenue and East Ferry Street in Buffalo, New York. The caller stated, "I don't know who they're about to shoot. Send somebody, please." The police dispatcher reported that the call had been made from Dexter Drugs, purportedly located at that intersection. Almost immediately after this radio transmission, an unidentified police officer reported that Dexter Drugs is actually located on the corner of Jefferson Avenue and East Ferry Street, which is four blocks from Wohlers Avenue. At approximately 11:39 p.m., Buffalo Police Officers Mark Costantino, Joseph Langdon, and Molly Sanford, who were riding in a marked police car, arrived at the intersection of Wohlers Avenue and East Ferry Street. The area was deserted, and Officer Costantino reported to the dispatcher that the call was a "fake," which is standard procedure when "nothing is showing." However, Officer Costantino and his colleagues decided to remain in the area because they suspected that the suspects were still in the vicinity.

The officers continued to patrol this "high crime area," and at approximately midnight, they approached the intersection of Woodlawn and Jefferson Avenues, which is one block from Dexter Drugs. Officer Costantino, who was driving, observed Timothy Manuel ("Defendant–Appellant") and a woman, Tremiya Frazier, standing outside a convenience store that is operated by an individual of Arab descent, as well as five or six individuals across the street. Officer Costantino had previously observed Defendant–Appellant at the same intersection earlier that evening. Two men of Arab descent were standing in the doorway of the convenience store, and one of them waived to the officers and pointed to Defendant–Appellant.

Officer Costantino made a U-turn on Jefferson Avenue and stopped in front of the store. Officers Costantino and Sanford approached Defendant–Appellant and Frazier, respectively, while Officer Langdon approached the man who had signaled

the officers. When Officer Costantino was approximately five feet away from Defendant–Appellant, he noticed "a bulge in the front of [his] pants' waist area." At that point, Defendant–Appellant turned away from the officer and picked up the receiver of a nearby pay phone. After ordering Defendant–Appellant to turn around and extend his hands, Officer Costantino "patted the bulge in [his] waist area as a safety precaution and determined that the bulge was in fact a gun." The officer seized the gun and arrested Defendant–Appellant.

Defendant–Appellant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant–Appellant moved to suppress the gun, arguing that Officer Costantino's "stop and frisk" violated the Fourth Amendment. Defendant–Appellant also moved to dismiss the indictment on the grounds that it was both selective and violative of his rights under the Equal Protection Clause, and he sought discovery to establish his selective prosecution claim. U.S. Magistrate Judge H. Kenneth Schroeder, Jr. issued reports and recommendations on March 23 and August 14, 2001 recommending that Defendants–Appellants' claims be denied, which U.S. District Judge Richard J. Arcara adopted on June 13 and November 14, 2001, respectively. Defendant–Appellant subsequently pleaded guilty, though the plea agreement reserved his right to appeal the district court's rulings.

On appeal, Defendant–Appellant first argues that the district court erred in denying his motion to suppress because, under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Officer Costantino lacked reasonable suspicion to justify the "stop and frisk."[1] In such cases, we review the district court's findings of fact for

clear error, viewing the evidence in the light most favorable to the government. *United States v. Brown,* 52 F.3d 415, 420 (2d Cir.1995); *United States v. Uribe–Velasco,* 930 F.2d 1029, 1032 (2d Cir.1991). We review *de novo* questions of law, such as whether the information possessed by Officer Costantino gave him reasonable suspicion to stop Defendant–Appellant. *See Uribe–Velasco,* 930 F.2d at 1032.

A police officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry,* 392 U.S. at 30). Moreover, if officers reasonably suspect that a lawfully detained individual is armed, they may perform a protective, limited search for weapons. *See McCardle v. Haddad,* 131 F.3d 43, 48 (2d Cir.1997). Assessment of reasonable suspicion requires an objective evaluation of the "totality of the circumstances." *United States v. Bayless,* 201 F.3d 116, 132–33 (2d Cir. 2000).

■ We conclude that Officer Costantino had reasonable suspicion to stop Defendant–Appellant. Contrary to Judge Schroeder's conclusion, we find that the 911 call is relevant to our inquiry. Judge Schroeder disregarded the 911 call because he found that Officer Costantino "concluded" that it was a "fake." However, Officer Costantino never conclusively determined that the call was, in fact, fictitious. Rather, he merely informed the police dispatcher that the call was a "fake," which is standard procedure for indicating that nothing was discovered. Moreover, Officer Costantino testified that he remained in the area specifically because he

---

1. The government concedes on appeal that the officer's actions constituted a "stop and frisk."

suspected that the purported gunmen were in the vicinity. Accordingly, the district court erred in concluding that the 911 call was not relevant.

Approximately 20 minutes after responding to the 911 call, Officer Costantino observed a man of Arab descent standing outside a store that he knew was operated by such an individual, signaling him and pointing to Defendant–Appellant. The store is located approximately four blocks from the intersection identified in the 911 call and one block from Dexter Drugs, which, according to the police dispatcher, is where the 911 call was placed. Although Defendant–Appellant argues that it was unclear why the man was waiving and pointing, Officer Costantino would have been reasonable in suspecting that the unnamed individual was indicating that Defendant–Appellant was the subject of the 911 call and possessed a gun. Citing *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), Defendant–Appellant argues that these gesticulations were akin to an anonymous tip, which is insufficient, standing alone, to constitute reasonable suspicion for a "stop and frisk." However, the instant case is distinguishable because the "tip" was not truly anonymous. Officer Costantino knew that the store was owned and operated by an individual of Arab descent, and Judge Schroeder found that, in fact, "the police were flagged down by the store operator." Regardless, reasonable suspicion in this case is supported by more than an anonymous tip. Officer Costantino's stop was also justified by his observation that Defendant–Appellant had a bulge in the front of his pants at the waist, which is where criminals often conceal guns. Moreover, Defendant–Appellant turned away from the approaching officer, presenting the possibility that he intended to use the gun in an unlawful manner. While Defendant–Appellant correctly states that an officer may frisk someone only after he has law-fully stopped him, the bulge is relevant to whether the stop itself was lawful, because Officer Costantino noticed it *before* he stopped Defendant–Appellant, *viz.*, when he was approximately five feet away.

Finally, the incident occurred shortly after midnight in a high-crime area. While "an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[,] ... officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir.2003) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

In sum, we find that Officer Costantino had reasonable suspicion to stop Defendant–Appellant. Officer Costantino received an anonymous report that three individuals with guns were standing on a corner in a "high crime area" shortly before midnight. Twenty minutes later, he noticed someone who appeared to be a local store owner signaling him and pointing to Defendant–Appellant. The intersection was approximately four blocks from the suspects' last known location and one block from where the 911 call was purportedly placed. Upon approaching Defendant–Appellant, Officer Costantino noticed a bulge in his waist area, and Defendant–Appellant turned away from the approaching officer. Based upon these facts, we conclude that Officer Costantino had reasonable suspicion to believe that Defendant–Appellant unlawfully possessed a concealed weapon. Upon concluding that the stop was lawful, we find that Officer Costantino's frisk was justified, because the bulge in Defendant–Appellant's waist area permitted him to conclude that Defendant–Appellant was armed and posed a

danger to the officers. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111–12, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

Defendant–Appellant also argues that 18 U.S.C. § 922(g)(1) violates the Equal Protection Clause because it distinguishes between felons who possess firearms that were transported in interstate commerce and those who possess firearms that were not. As the right to possess a gun is not a fundamental right, *United States v. Toner,* 728 F.2d 115, 128 (2d Cir.1984), and "felons" do not constitute a suspect class, *see Baker v. Cuomo,* 58 F.3d 814, 820–22 (2d Cir.1995), *vacated on other grounds by Baker v. Pataki,* 85 F.3d 919 (2d Cir.1996) (en banc), the statute will be deemed constitutional if there is a "rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The interstate commerce requirement of 18 U.S.C. § 922(g)(1) is jurisdictional in nature, which satisfies the Equal Protection Clause. *See Packer Corp. v. State of Utah,* 285 U.S. 105, 110, 52 S.Ct. 273, 76 L.Ed. 643 (1932) (Brandeis, J.) ("It is a reasonable ground of classification that the State has power to legislate with respect to persons in certain situations and not with respect to those in a different one.").

Finally, Defendant–Appellant argues that he was selectively prosecuted as part of "Project Exile," a federal program to prosecute firearm offenses. He requests that we reverse the district court's decision to deny his motion for discovery and vacate the district court's ruling on his motion to dismiss the indictment. The Supreme Court has held that a defendant who seeks discovery on a claim of selective prosecution must first show "some evidence" of both discriminatory effect and discriminatory intent. *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). As Defendant–Appellant proffers no evidence of either, we affirm the district court's decisions with respect to the selective prosecution claim.

Based upon the foregoing, the judgment of the United States District Court for the Western District of New York is **AFFIRMED.**