**UNITED STATES of America, Plaintiff,**

v.

**Ray Reci ROBINSON, Defendant.**

**No. 02–CR–80412.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 4, 2003.

Patricia Uetz, AUSA, Regina McCulloug, AUSA, Steven Hiyama, AUSA, Detroit, for plaintiff.

John F. Royal, Esq., Detroit, for defendant.

*OPINION AND ORDER DENYING*
*DEFENDANT'S MOTIONS TO*
*DISMISS INDICTMENT*

ROSEN, District Judge.

## I. *INTRODUCTION*

The above-captioned criminal action is presently before the Court on Defendant Ray Reci Robinson's two separately-filed motions to dismiss. Although the motions were originally filed and briefed by both Defendant and the Government in the fall of 2002, Defendant's original counsel (who filed the motions on behalf of Defendant Robinson) was granted leave to withdraw, and new counsel requested, and was granted, leave to supplement the motions. The Government, in turn, requested, and was granted, the opportunity to respond to any such supplemental briefs.

Defendant's Supplemental Memorandum in Support of his motions to dismiss was filed on July 8, 2003 and the Government responded to this Supplemental Memorandum on August 28, 2003. The Court heard oral argument on this matter on October 29, 2003. Having reviewed and considered the parties' briefs and the oral arguments of counsel, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL BACKGROUND*

Defendant Ray Reci Robinson, a previously convicted felon, was arrested by Detroit Police Officers on April 27, 2001 during the execution of a search warrant of a Detroit home. Robinson was found to be in possession of a .32 caliber revolver at that time. There was also, at the time of his arrest, an outstanding warrant on Robinson for a controlled substance probation violation, pursuant to which Robinson was immediately taken into custody and lodged at the Wayne County Jail. On May 2, 2001, Robinson entered a plea of guilty on the probation violation and, on May 18, 2001, he was sentenced on the state law controlled substance offense by the Wayne County Circuit Court to a prison term of 3½ to 20 years. He was subsequently remanded to the custody of the Michigan Department of Corrections and transported to the Macomb Correctional Facility on May 21, 2001 to serve his state sentence.

Meanwhile on May 14, 2001, the federal authorities charged Robinson in a one-count criminal Complaint with being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and a warrant for his arrest on this federal charge was issued at the same time. Robinson, however, never appeared on the Complaint. According to the Government, a "Detainer against Unsentenced Prisoner" was lodged against Robinson by the U.S. Marshal on May 15, 2001 [*see* Defendant's Supplemental Brief, Ex. 5] but, as indicated on the face of this detainer, it was directed to the Wayne County Jail. This detainer was correct at the time because on May 15, Defendant was not a "prisoner", i.e., someone who was convicted and sentenced to a term of imprisonment who was serving that term at a correctional facility.[1] It was not until he was transferred to the Michigan Department of Corrections on May 21, 2001 that Robinson became a "prisoner" within the meaning of the Interstate Agreement on Detainers (the "IAD").[2] According to

---

1. *See, United States v. Taylor,* 173 F.3d 538, 541 (6th Cir.1999), *cert. denied,* 528 U.S. 987, 120 S.Ct. 448, 145 L.Ed.2d 365 (1999).

2. As the Wayne County Jail was advised on the face of the Detainer Against Unsentenced Prisoner which was lodged against Defendant

Robinson on May 15, 2001, "The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the subject is currently not serving a sentence of imprisonment at the time the Detainer is lodged." [Defendant's Supp. Brief, Ex. 5.] This Detainer, however,

the Government, a different federal detainer is designed to be used against a "prisoner," i.e., the Form USM–17, captioned "Detainer Against Sentenced Prisoner." [3] The Government concedes that, "on account of a communication breakdown," no Form USM–17 was lodged against Defendant Robinson after May 21, 2001. Therefore, the only detainer that the Michigan Department of Corrections had in its possession was the May 15, 2001 Detainer that was issued before Robinson became a "prisoner" under the IAD. The Michigan Department of Corrections acknowledged receipt of the detainer forwarded to it from the Wayne County Jail on May 29, 2001,[4] and so advised then U.S. Marshal James Douglas in writing as follows,

> We are in receipt of your request for detainer placement. We have lodged a detainer against Mr. Robinson for your jurisdiction. Mr. Robinson will be informed of your detainer and your desire to take custody upon release from the Michigan Department of Corrections. Approximately 60 days prior to Mr. Robinson's release a determination will be made as to whether a waiver of extradition is necessary.

> Mr. Robinson is serving a 3 year 6 month to 20 year sentence for Controlled Substance. His earliest release date is 4/01/2004 and his maximum release date is 3/25/2021.

If we can be of further assistance, do not hesitate to contact this office.

[Defendant's Supp. Ex. 6.]

Defendant does not dispute that he was notified by the MDOC of the federal detainer lodged against him. He maintains, however, that he was never informed by any officials of the MDOC of his right to demand a speedy trial on the federal charges, nor provided any form notifying him of his speedy trial rights under the IAD or what he had to do in order to demand a speedy trial. He does not claim, however, that he was unaware of his speedy trial rights, only that he "did not demand a speedy trial under the Speedy Trial Act or the Interstate Agreement on Detainers... because [he] did not know how to do so." [*See* Robinson Affidavit, ¶ 11.]

Robinson was subsequently indicted by the Grand Jury on May 8, 2002, and was charged in a two count Indictment with being a felon-in-possession of a firearm (Count I) and possession with intent to distribute crack cocaine (Count II). On May 20, 2002, Robinson appeared for the first time on the Indictment and on May 21st, he was arraigned.

On August 28, 2002, through previous counsel, Robinson, filed two separate motions to dismiss the indictment. In the first motion to dismiss, Defendant argues that his rights under the Speedy Trial Act,

---

requested in bold-face type, "**IF THE SUBJECT IS SENTENCED WHILE THIS DETAINER IS IN EFFECT, PLEASE NOTIFY THIS OFFICE AT ONCE.**" *Id.* (The detainer further requested that, if Robinson was transferred from the Wayne County Jail to another facility and that the detainer be forwarded to that other facility and that the U.S. Marshal's office be notified of the transfer as soon as possible. *Id.*)

**3.** Although the Government states in its Supplemental Response Brief that a copy of a

blank Form USM–17 was attached, no such copy was attached to the copy of the brief filed with the Court.

**4.** The Wayne County Jail complied with the request in the "Detainer Against Unsentenced Prisoner" lodged with that facility against Robinson, which asked the Wayne County Jail, "If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer." [Defendant's Supp. Ex. 5.]

18 U.S.C. § 3161(b), have been violated due to the fact that he was not brought before the Court sooner on the charges. In his second motion, Defendant argues that 18 U.S.C. § 922(g), the felon-in-possession statute, violates his constitutional right to equal protection under the law. Robinson's theory with regard to this latter motion is that a defendant in a state that manufactures firearms is immune from conviction under Section 922(g) but a similarly-situated defendant (such as he) from a state that does not manufacture firearms can be charged and convicted under the same statute based on the "jurisdictional element" of the statute.

After the Government responded to Defendants' motions and Defendant replied, the matter was scheduled for hearing on November 7, 2002. However, prior to the scheduled hearing, Defendant's counsel moved for, and was granted, leave to withdraw. After new defense counsel was appointed, Defendant requested, and was granted, permission to supplement his motions. Defendant's Supplemental Memorandum was filed on July 8, 2003. The Government filed its Response to Defendant's Supplemental Memorandum on August 28, 2003.

In his Supplemental Memorandum, Defendant supplements his Speedy Trial Act motion with two new arguments. First, Defendant maintains that the failure of the MDOC or the Federal Government to inform him of his speedy trial rights in conjunction with the federal detainer lodged against him violated the Interstate Agreement on Detainers and mandates dismissal of this case. Second, Defendant argues that in addition to the Speedy Trial Act violation that he argued in his original motion to dismiss, his Constitutional right to a speedy trial has been violated.

## III. DISCUSSION

### A. THE COMPLAINED OF VIOLATION OF THE IAD IS NOT SANCTIONABLE BY DISMISSAL OF THE CHARGES AGAINST DEFENDANT ROBINSON

When a federal detainer based on pending criminal charges is lodged against a state prisoner, both the Speedy Trial Act and the Interstate Agreement on Detainers require that the warden of the state correctional facility notify the defendant of the pending charges and his right to a speedy trial on those charges.

18 U.S.C. § 3161(j) provides:

(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution he shall promptly -

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge [on which the detainer is based] and of the prisoner's right to demand trail. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

18 U.S.C. § 3161(j).

The IAD contains a similar provision:

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also

inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

18 U.S.C. app. 2, § 2, art. III(c).

■ In this case, the Government concedes that Defendant Robinson was not informed by Michigan prison officials that he had the right to demand a trial on the federal charges pending against him. However, the failure to inform a prisoner of his right to demand trial is not sanctionable by the dismissal of the pending criminal charges. *United States v. Lualemaga,* 280 F.3d 1260, 1265 (9th Cir.2002), *cert. denied,* 536 U.S. 949, 122 S.Ct. 2641, 153 L.Ed.2d 820 (2002) ("[W]e hold that dismissal of an indictment is not an available form of relief where the notice requirement of the IAD is violated, even when that violation is attributable to the receiving State, here the United States."); *United States v. Walker,* 255 F.3d 540, 542 (8th Cir.2002), *cert. denied,* 535 U.S. 1011, 122 S.Ct. 1591, 152 L.Ed.2d 508 (2002) (dismissal of indictment for violation of notice requirement not authorized by either the Speedy Trial Act or the IAD).

■ The Ninth Circuit's reasoning in *Lualemaga* is persuasive. As in this case, in *Lualemaga,* the defendant contended that the IAD was violated because he was not told by either the State of Hawaii's correction officers or Federal Government authorities of his right to make a request for a final disposition of the federal indictment and that, because of this violation of the IAD, the federal indictment against him should be dismissed. The Ninth Circuit rejected Lualemaga's contention, explaining:

The notice requirements of the IAD play an integral role in the operation of the Act. If a State (the "receiving State") lodges a detainer against a prisoner held in another State (the "sending State"), the sending State must notify the prisoner of the detainer and of his or her rights under the IAD. This notice requirement reads:

The [sending State's] warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C.App. 2, § 2, Art. III(c). If a prisoner decides to exercise his or her right to request a final disposition, that request must be sent to, and received by, the receiving State's prosecutor and judge. *See id.* Art. III(b); *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). Once the request is received, unless the matter is resolved without a trial or a statutory exception applies, trial must begin within 180 days. See 18 U.S.C.App. 2, § 2, Art. III(a). If more than 180 days pass, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice...." *Id.* Art. V(c). Where, as here, the receiving State is the federal government, the dismissal may be without prejudice. *Id.* § 9.

In the present case, one of the IAD's notice requirements was indisputably violated. The plain language requires that a prisoner be told "of his right to make a request for final disposition of the indictment." *Id.* § 2, Art. III(c). Lualemaga was informed of the detainer, but not of his right to request a final disposition. **However, just because a violation of the IAD occurred does not mean that dismissal is the remedy.**

**The plain language of the IAD expressly mandates dismissal of an indictment in only three circumstances:** (1) If a prisoner, having been transferred to the receiving State, is returned to the sending State prior to the completion of trial, *see id.* Art. IV(e); *see also* [*Alabama v. Bozeman*, 533 U.S. 146, 121 S.Ct.[2079,] 2084–85, 150 L.Ed.2d 188 [ (2001) ]; (2) If the receiving State fails to accept temporary custody of the prisoner after filing a detainer, see 18 U.S.C.App. 2, § 2, Art. V(c); and (3) If a prisoner is not brought to trial within the time periods proscribed by Articles III and IV, which respectively require trial within 180 days of a State receiving a prisoner's IAD request or within 120 days of a prisoner being transferred to a receiving State, when an officer of the receiving State requested that transfer. *See id.* Art. III(a), IV(c), V(c). The IAD does not state what remedy, if any, is available if the prisoner is not informed of his right to demand a trial.

This suggests dismissal is not an appropriate sanction for such a violation. Although we have not previously examined the question, other circuits have reached the conclusion that the enumerated list of circumstances requiring dismissal is exclusive. *See United States v. Pena–Corea*, 165 F.3d 819, 821–22 (11th Cir.1999) (per curiam) (holding that the remedy of dismissal in IAD cases is limited to specifically stated circumstances); *Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir.) (same), opinion modified on other grounds, 149 F.3d 1226 (5th Cir.1998).

If the IAD violation in this case were solely attributable to the sending State, Hawaii, then application of this reasoning would be fairly straightforward. A violation of the notice requirement by the sending State is not a circumstance in which the IAD calls for dismissal of an indictment. Further, if Hawaii were solely responsible, then it would not be fair to penalize the receiving State, the United States, for Hawaii's negligence. *See Pena–Corea*, 165 F.3d at 821–22 (holding that the United States should not be responsible for a sending State's negligent violation of the IAD notice requirement); *see also Fex*, 507 U.S. at 50–51, 113 S.Ct. 1085, 122 L.Ed.2d 406 (construing the IAD to avoid holding a receiving State responsible for a sending State's negligence).

We must, however, consider whether the conduct of the United States in this case, which contributed to the violation, could alter the analysis. We have never addressed this issue under the IAD, but our equivalent precedent under the Speedy Trial Act (STA), 18 U.S.C. §§ 3161–3174, provides substantial guidance. Like the IAD, the STA contains a notice provision that requires federal officials to ensure that prisoners are informed of their right to a speedy trial. *See id.* § 3161(j)(1). In *United States v. Valentine*, 783 F.2d 1413 (9th Cir.1986), a federal prisoner alleged that federal prosecutors failed in their duty to implement the STA notice provision. The prisoner sought to have his indictment dismissed as a sanction for this violation. *Id.* at 1415. We held that even if § 3161(j)(1) was violated, the STA required dismissal only in certain specified circumstances, and a violation of § 3161(j)(1), the STA notice provision, was not such a circumstance. *Id.* at 1415–16; *see also United States v. Stoner*, 799 F.2d 1253, 1257 (9th Cir.1986) (reaching the same conclusion as to a different STA provision).

An Eighth Circuit case similar to the present case is *United States v. Walker*, 255 F.3d 540 (8th Cir.2001). There, the federal government misidentified a prisoner as unsentenced and not subject to the IAD and, as a result, the prisoner

was not informed of his IAD rights. *Id.* at 541. The Eighth Circuit rejected the prisoner's motion to dismiss the federal indictment, principally relying upon the limited circumstances in which the IAD's plain language mandates a dismissal and analogizing to *Pena–Corea* and *Lara. See Walker,* 255 F.3d at 542.

*Valentine* and *Walker* strongly support the conclusion that Lualemaga's indictment should not be dismissed for violation of the IAD's notice requirement, even if the United States is responsible. Nor could it be argued successfully that dismissal of this case is warranted under our holding in *United States v. Johnson,* 196 F.3d 1000 (9th Cir.1999). There, a prisoner utilized a form developed by the U.S. Marshal's service to request a final disposition under the IAD. Although the State prison officials transmitted that form request to the U.S. Marshal, the request never reached the U.S. Attorney and over 180 days passed. We held that dismissal of the prisoner's indictment was warranted under the IAD. *Id.* at 1001.

It is true that in both *Johnson* and the present case the procedures of the U.S. Attorney's office, acting through the U.S. Marshal, failed and, as a result, the IAD was violated. However, while equitable considerations did inform our analysis in *Johnson,* we rested our decision upon an interpretation of the IAD consistent with its plain language. *Id.* at 1001, 1003 n. 5, 1005. We held that receipt by the U.S. Marshal of the prisoner's request was sufficient to satisfy the IAD's Article III requirement of receipt by the receiving State's prosecutor because the U.S. Attorney's office chose to use the U.S. Marshal's service to process the request. *Id.* at 1003. The prisoner, therefore, had made his request in the manner and within the time prescribed by the Act. Here, Luale-

maga made no such timely request; thus, Johnson is inapposite.

While *Johnson* does not inform our decision, *Valentine* and *Walker* do. Consistent with those cases, **we hold that dismissal of an indictment is not an available form of relief where the notice requirement of the IAD is violated, even when that violation is attributable to the receiving State, here the United States.**

280 F.3d 1260, 1263–1265 (emphasis added).

As the Ninth Circuit observed in *Lualemaga,* the IAD's notice provision is substantially similar to the notice provision in the Speedy Trial Act, 18 U.S.C. § 3161(j)(1). The Sixth Circuit has held, albeit in an unpublished decision, that dismissal of the indictment is not an available remedy for a violation of the notice provisions of 18 U.S.C. § 3161(j). *See United States v. Dahlquist,* 993 F.2d 1547, 1993 WL 152073 (6th Cir.1993) (unpublished decision; text available on WESTLAW) (affirming district court's denial of defendant's motion to dismiss indictment in which the defendant argued that although he had received a copy of the detainer lodged against him, he was not advised of his right to demand trial on the charges). Other courts have also concluded that dismissal of an indictment is not an appropriate remedy for violations of § 3161(j)(1). *See United States v. Guzman,* 85 F.3d 823, 829 n. 4 (1st Cir.1996) ("[T]he law is pellucid that the dismissal of an indictment is not a suitable remedy for a violation of 18 U.S.C. § 3161(j)."); *United States v. Dawn,* 900 F.2d 1132, 1135–36 (7th Cir. 1990); *United States v. Anderton,* 752 F.2d 1005, 1008 (5th Cir.1985); *United States v. Walker, supra.*

Notwithstanding the clear weight of authority to the contrary, Defendant argues that dismissal of his indictment in this case

is required under the rationale of *United States v. Reed*, 910 F.2d 621 (9th Cir.1990) and *United States v. Zfaty*, 44 F.Supp.2d 588 (S.D.N.Y.1999). In both of these cases, the defendants were not provided with federally-sanctioned Speedy Trial request forms and therefore, successfully argued that it was the result of government negligence that they were unable to comply with the IAD's procedural requirements for making a demand for a speedy trial.

Relying on *Reed* and *Zfaty*, the defendant in *United States v. Walker, supra*, attempted to argue that dismissal of the indictment against him was mandated. The Eighth Circuit summarily rejected the argument explaining:

> We disagree that *Reed* and *Zfaty* support dismissal as a remedy.... We read them [only] to stand for the proposition that where the government has failed to comply with IAD notice requirements, it is bound to comply with an inmate's IAD request for speedy trial even if that request fails to comply with the IAD's technical requirements.

255 F.3d at 542.

The *Walker* court determined that the imposition of dismissal as a remedy is only available for violation of Article V(c) of the IAD, which expressly authorizes dismissal for failure to timely honor a prisoner's request for final disposition. *Id.*

Like the defendant in *Walker*, Defendant Robinson never made any request for a trial or final disposition of the federal charges to the state prison officials, the U.S. Marshal's office, the U.S. Attorney's office, or to the Court. Therefore, his reliance on the *Reed* and *Zfaty* line of cases is misplaced.

Based upon the foregoing discussion, the Court finds that dismissal of the indictment is not available as a remedy for the alleged failure of the MDOC or the Federal Government to comply with the notice provisions of the IAD or 18 U.S.C. § 3161(j)(1). Therefore, Defendant's motion to dismiss on these grounds will be denied.

B. *THE APPLICABLE IAD SPEEDY TRIAL RULE WAS NOT VIOLATED*

As the Supreme Court explained in *Cuyler v. Adams*, 449 U.S. 433, 443, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), the IAD "establishes two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State. One of these procedures may be invoked by the prisoner [IAD, Article III]; the other by the prosecuting attorney of the receiving State [IAD, Article IV]."

The prisoner-initiated transfer begins when the prisoner "cause[s] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint[.]" 18 U.S.C. app. 2, art. III(a). This type of transfer is governed by the IAD's 180–day speedy trial rule. *Id.* The prosecutor-initiated transfer begins when the prosecutor causes to be presented to the warden of the facility in which the prisoner is incarcerated "a written request for temporary custody." *Id.*, § 2, art. IV(a). This type of transfer is governed by the IAD's 120–day speedy trial rule. *Id.* § 2, art. IV(c).

■ In this case, Defendant Robinson did not provide any notice to state prison officials, the U.S. Attorney's Office, or the Court that he wanted to be tried on the charges contained in the indictment. Thus, it is clear that Defendant's transfer to federal custody was initiated by the prosecutor, here the U.S. Attorney, through the writ of habeas corpus ad pro-

seqendum issued on April 24, 2002, and that the IAD's 120–day speedy trial rule applies.

Article IV of the IAD, governing prosecutor-initiated transfers, states in pertinent part, "In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty [120] days of the arrival of the prisoner in the receiving State[.]" 18 U.S.C. app. 2, § 2 (art. IV(c)). On May 20, 2002, Defendant was taken into federal custody pursuant to a writ of habeas corpus ad prosequendum issued on April 24, 2002. As a result the IAD required that the trial in this case commence on or before September 17, 2002.

However, the IAD also encompasses the same conditions and circumstances as the rules for excludable time under the Speedy Trial Act. *United States v. Cephas*, 937 F.2d 816, 819 (2nd Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir.1996); *United States v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Odom*, 674 F.2d 228, 231 (4th Cir.1982), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982) ("[D]elay that is lawful under the Speedy Trial Act generally will comply with the Detainer Act."); *United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir. 1992), *cert. denied*, 506 U.S. 879, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992) ("Where delay is excludable under the Speedy Trial Act because it is attributable to a defendant's own motions, the running of the Interstate

Detainers Act's speedy trial clock is also tolled.")

In this case, on July 19, 2002, approximately 58 days after he had "arrived in the receiving state," (i.e., taken into federal custody), Defendant requested leave to file pretrial motions and an extension of the original June 10, 2002 motion cut-off, and stipulated to an adjournment of the trial "to a time most convenient for the Court," agreeing that then entire period of delay until trial "shall constitute excludable delay for the purpose of the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(A)." [5] Then, on August 28, 2002, Defendant filed two motions to dismiss the indictment. The motions which have been followed by the filing of responses, replies, and supplemental memoranda, remain pending. Under the Speedy Trial Act, the filing of a motion tolls the speedy trial clock. *See* 18 U.S.C. § 3161(h)(1)(F). *See also, United States v. Mentz*, 840 F.2d 315, 326–27 (6th Cir. 1988).[6] Therefore, as of the date of the October 29, 2003 hearing on this matter, there remain at least 60 days left on the IAD speedy trial clock. Accordingly, there has been no IAD or Speedy Trial Act violation.

C. *DEFENDANT'S SIXTH AMENDMENT SPEEDY TRIAL RIGHTS WERE NOT VIOLATED*

Defendant also contends that his Fifth and Sixth Amendment rights to a speedy trial and due process have been violated because of the length of time taken to bring him to trial.

---

**5.** The Court subsequently set two new trial dates which by stipulation and agreement regarding excludable delay, were also adjourned at the request of the parties.

**6.** Defendant's original counsel was also granted leave to withdraw during the pendency of the motions to dismiss and new counsel needed time to familiarize himself with the case after his appointment. This period of time also constitutes excludable delay under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(8)(B)(iv).

■ Resolution of Defendant Robinson's constitutional speedy trial claim requires the balancing of four factors: (1) the length of delay, (2) the reasons for the delay, (3) the manner of the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *See also, United States v. Mundt*, 29 F.3d 233 (6th Cir.1994). In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court reaffirmed the *Barker* test but stated the four criteria slightly differently, instructing courts to consider (1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result. *Id.* at 651, 112 S.Ct. 2686 (enumeration added). As the Court in *Barker* stressed, however, none of the four factors is necessary or sufficient in and of itself; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Barker, supra,* 407 U.S. at 533, 92 S.Ct. 2182. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.*

The Court will, therefore, examine and balance the facts of this case in light of the *Barker/Doggett* factors.

■ Here, the length of delay is bounded by the filing of the federal complaint on May 15, 2001, and the present time, approximately 29 months. The Supreme Court in *Barker, supra* found no constitutional violation even though the delay between the defendant's arrest and trial in that case was 5½ years, more than twice as long as the complained of delay in this case. 407 U.S. at 533, 92 S.Ct. 2182. Furthermore, the Sixth Circuit has held that the absence of a Speedy Trial Act violation weighs heavily against a finding of a violation of the Speedy Trial Clause of the Constitution. *See, United States v. DeJesus,* 887 F.2d 114, 116 n. 1 (6th Cir.1989) (refusing to consider constitutional claim where no Speedy Trial Act violation was found; "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated"). Applying the foregoing, the Court finds that the length of delay does not weigh very heavily in favor of Defendant Robinson.

The second criterion, the reason for the delay, calls for a judicial assessment of relative blameworthiness. *See Doggett, supra; see also, Wilson v. Mitchell,* 250 F.3d 388, 395 (6th Cir.2001) ("[T]he 22-year delay can be placed on both Wilson and the state. This inquiry, however, is not a search for a blameless party. We are instead concerned with who 'is more to blame for that delay.' ")

Here, the Government concedes that it did not cause the proper detainer form to be lodged against Defendant once he became a state "prisoner." However, it is undisputed that Defendant was made aware of the pending firearm charge against him. *See* Defendant's Supplemental Brief Ex. 7; *see also* Defendant's Supp. Exhibits 5 and 6. There is nothing in the record that suggests that Defendant could not have made further inquiry of state prison officials about what he could do to expedite the resolution of the federal charges described in the detainer. As the Government notes in its Supplemental Response Brief, "One suspects that defendant simply chose to ignore the detainer, imperfect as it was, in the hope that the federal case would somehow just go away. Making further inquiries about the federal case

would probably ensure that he would be forced to deal with it."

As to delay since May 8, 2002, the date of the Grand Jury Indictment—a period of approximately 17 months (i.e., more than half of the complained of total 29–month delay in this case), much of the delay was caused by Defendant Robinson himself. Trial on this matter was originally scheduled for July 2, 2002, i.e., within six weeks of Defendant's arraignment. However, Robinson requested an adjournment of that trial date and an extension of time within which to file motions. The Government stipulated to the relief Robinson requested and the Court entered an Order in accordance therewith—the trial date was adjourned and Defendant was allowed until the end of August, 2002 to file his motions.

Then, on August 29, 2002 Robinson filed his motions to dismiss. Although the motions were briefed and originally scheduled to be heard on November 7, 2002, due to his complained of breakdown in his relationship with his (previous) attorney, Robinson's counsel requested and was granted leave to withdraw. Substitute counsel, therefore, was required, and sufficient time allowed for new counsel to familiarize himself with the case. Defendant subsequently requested and was granted leave to supplement his previously filed motions before the Court considered them. Defendant's Supplemental Memorandum, however, was not filed until July 8, 2003. After the Government responded on August 28, 2003, the Court scheduled motions for hearing on its first available motion hearing date (October 29, 2003) and scheduled trial for November 4, 2003. The foregoing demonstrates that Defendant Robinson is more blameworthy than the Government for most of the delay in this case.

The third *Barker/Doggett* factor, which is related in this case to the second factor, further cuts against Defendant's claim. This factor is whether and how promptly and forcefully the defendant asserted his right to speedy trial. In this case, Defendant Robinson utterly failed to assert his right to a speedy trial, or even attempt to assert that right.

As indicated above, Defendant learned that he faced federal charges on May 29, 2001, a mere two weeks after the charges had been filed on May 29, 2001 in a Criminal Complaint. At no time after May 29 did Robinson make any effort to notify any State of Federal official that he wanted a speedy trial on the federal charges. It was not until he filed his Motions to Dismiss on August 29, 2002. For the first 15 months of the post-Complaint delay Defendant gave no indication whatsoever that he wanted a speedy trial.[7]

Finally, Defendant has shown no prejudice to his defense resulting from the delay. Defendant has been incarcerated pending commencement of the trial in this case, but that is merely a function of his 3½–20 year state sentence, imposed in May 2001, not the pretrial delay in this case. He also claims that he has lost track of an essential exculpatory witness due to the passage of time:

12. At the time of my arrest in Detroit on April 27, 2001, I was in a drug house. Another man was present in that drug house at the time selling drugs. When he noticed the police had arrived, he fled out of the house and escaped before the police could apprehend him. This other man is an essential witness in my de-

---

7. In his July 10, 2003 Affidavit in Support of his Supplemental Memorandum, Robinson offers this tepid excuse for not asserting his speedy trial rights sooner: "The only reason I did not timely demand a speedy trial under the Speedy Trial Act or the Interstate Agreement on Detainers is because I did not know how to do so." Robinson Affidavit, ¶ 11.

fense because he could testify that he was the individual who was selling in the house.... At this point, I cannot possibly locate this witness while I am incarcerated.

Robinson Affidavit, ¶ 12.

If in fact Defendant is now unable to locate this other man, there is no reason to believe that that inability is the result of or has anything to do with pretrial delay in this case. Rather, it is the result of Defendant's incarceration on the State charge. Defendant's knowledge concerning the identity and whereabouts of this potential witness is no different now than it was on April 27, 2001 when he taken into custody on the State offense.

Defendant also complains that he has been prejudiced by the pendency of this prosecution because it has made him ineligible for certain favorable placements and programs in the State prison. but this is not the kind of prejudice cognizable under the Speedy Trial Clause. *See e.g., United States v. White,* 985 F.2d 271, 276 (6th Cir.1993) (prejudice factor relates to delay that causes impairment of the defense, not delay that prevents the federal sentence from running concurrently with a previously imposed sentence).

In sum, considering the totality of the circumstances as measured by the *Barker/Doggett* factors, the Court finds no violation of Defendant's Fifth or Sixth Amendment due process or speedy trial rights.

### D. *DEFENDANT'S EQUAL PROTECTION ARGUMENT IS WITHOUT MERIT*

█ In his second Motion to Dismiss, Defendant argues that his right to equal protection under the law was violated when he was charged with being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g). Defendant's argument is that firearms are not manufactured in the State of Michigan and, therefore, any firearm found here has necessarily traveled in interstate commerce. He contends that a hypothetical defendant in a state where firearms are manufactured would not face a § 922(g) charge. Therefore, he claims his dissimilar treatment violates his right to equal protection and due process under the Fifth Amendment. Defendant offers no authority for his position.

Although the Sixth Circuit has not addressed such an argument, this identical claim was rejected by the Second Circuit in *United States v. Manuel,* 64 Fed.Appx. 823 (2nd Cir.2003). Like Defendant Robinson, the defendant in *United States v. Manuel* argued that 18 U.S.C. § 922(g)(1) violates the Equal Protection Clause because it distinguishes between felons who possess firearms that were transported in interstate commerce and those who possess firearms that were not. The Second Circuit rejected Manuel's equal protection challenge, explaining:

As the right to possess a gun is not a fundamental right, *United States v. Toner,* 728 F.2d 115, 128 (2d Cir.1984), and "felons" do not constitute a suspect class, *see Baker v. Cuomo,* 58 F.3d 814, 820–22 (2d Cir.1995), *vacated on other grounds by Baker v. Pataki,* 85 F.3d 919 (2d Cir.1996) (*en banc* ), the statute will be deemed constitutional if there is a "rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The interstate commerce requirement of 18 U.S.C. § 922(g)(1) is jurisdictional in nature, which satisfies the Equal Protection Clause. *See Packer Corp. v. State of Utah,* 285 U.S. 105, 110, 52 S.Ct. 273, 76 L.Ed. 643 (1932) (Brandeis, J.) ("It is a reasonable ground of classification that the State has power to legislate with respect to persons in certain situations

and not with respect to those in a different one.").

64 Fed.Appx. at 827, 2003 WL 21105366 at *4.

It has further been held that tailoring statutes so that they do not raise constitutional questions is at the very least a legitimate objective, and even perhaps almost always a desirable one. *See United States v. Watson,* 815 F.Supp. 827, 834 (E.D.Pa. 1993), *aff'd,* 26 F.3d 124 (3rd Cir.1994), *cert. denied,* 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 298 (1994) (federal anticarjacking statute held not violate equal protection on basis that Congress' failure to also prohibit the armed theft of cars that had never been in interstate commerce (i.e., "intrastate cars") creates an unconstitutional classification with respect to carjackings involving interstate commerce). "To hold otherwise would force Congress to push the ends of the constitutional envelope with every statute it enacts, thus rendering Congress powerless to predict confidently the validity of its own enactments." *Id.*

The Supreme Court tacitly recognized this principle in the context of the Commerce Clause in *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). In *Scarborough,* the Supreme Court was presented with the construction of 18 U.S.C.App. § 1202(a)(1), a predecessor of 18 U.S.C. § 922(g), which outlawed the receipt, possession, or transport in commerce or affecting commerce of any firearm by a convicted felon. In discussing the legislative history of the statute's requirement of a nexus to commerce, the Court observed: "Congress was not particularly concerned with the impact on commerce except as a means to insure the constitutionality of [the statute]." *Id.* at 575 n. 11, 97 S.Ct. at 1969 n. 11.

Based upon the foregoing, the Court rejects Defendant's equal protection argument based upon the jurisdictional "inter-state commerce" element of § 922(g). As the level of scrutiny afforded Defendant is one of "rational basis", all that is needed is "some legitimate governmental purpose" to satisfy equal protection. As the above-discussed authorities make clear, tailoring a federal statute to include an interstate commerce jurisdictional element so that it passes constitutional muster is a legitimate governmental purpose.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's two Motions to Dismiss the Indictment against him be, and hereby are, DENIED.